O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATED OF AMERICA,<br>**Plaintiff,**<br>vs.<br><br>ASSORTED FIREARMS,<br>MOTORCYCLES AND OTHER<br>PERSONAL PROPERTY,<br>**Defendants.** | CASE NO. CV 09-1887 DOC (MLGx)<br><br>O R D E R GRANTING<br>PLAINTIFFS' MOTION FOR<br>DEFAULT JUDGMENT<br><br>**Defendants.** |

Before the Court is a Motion for Default Judgment filed by Plaintiff United States of America (Dkt. 580). After considering the moving papers and oral argument, the Court GRANTS Plaintiff's Motion.

## I.    Background

This action arose from the Verified Complaint for Forfeiture ("Complaint") filed on May 8, 2009.  Plaintiff states that notice of this action has been given in the manner required by law. With respect to the defendant assets listed in Exhibit "M" to the Motion for Default Judgment filed on December 3, 2012, Plaintiff asserts that (1) no potential claimant or lienholder has sought to contest the forfeiture of the asset by filing a timely Statement identifying its rights or

interests (a "claim") with this Court; or (2) any claim filed with respect to the asset has been stricken or withdrawn.  Further, no potential claimant or lienholder has filed an Answer to the Complaint or otherwise defended his interest, if any, in the defendants listed in Exhibit "M" or, if an answer was filed, it has been stricken or withdrawn.  The defendant assets listed in Exhibit "N" to the government's default motion are subject to orders previously entered by this Court recognizing the liens of those lienholders listed in Exhibit "N."

Ten claimants against whom default was entered, nine filing together and one objecting separately, have opposed Plaintiff's motion. Jay Aguallo, Jose Borboa, Gary Guerrero, Mark Luttrell, Robert Medrano, Jose Padilla, Gerald Pontod, Harry Reynolds II, and Frederick Widmayer filed their Opposition (Dkt. 589) on January 14, 2013.  Juan Gonzalez, acting *pro se*, filed his Objection in Opposition (Dkt. 582) on December 10, 2012.

At oral arguments on February 14, 2013, claimants Harry Reynolds II, Gary Guerrero, Jay Aguallo, Jose Borboa, Robert Medrano, Jose Padilla, and Gerald Pontod were present with their counsel.  In addition, Moises Aragon, a former claimant whose claim and answer were struck on May 16, 2012, and who had not participated in nor filed any documents related to this proceeding, appeared before the Court pro se and asked that his claim be revived as well.

**Legal Standard**

Federal Rule of Civil Procedure 55 provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk.  Fed. R. Civ. P. 55(b).  Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment.  Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages.  *See, e.g.*, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992).  Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  A court

may not enter a default judgment against an unrepresented minor, incompetent person, or person in military service.  Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 520.

When a party applies for default judgment, "the court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

## II.    Discussion

Here, claimants' opposition to Plaintiff's Motion for Default Judgment requires first that they be granted leave to pursue their claims in the form of relief from an entry of default or permission to file exceedingly late claims.

### a.  Standards for Relief from Default

Requests for relief from the entry of default are governed by Federal Rule of Civil Procedure 55(c), and should be granted only upon a showing of good cause by the party seeking relief.  Fed. R. Civ. Proc. Rule 55(c).  A district court has broad discretion to grant such relief. *Brady v. United States, 211 F.3d 499*, 504 (9th Cir. 2000).  While a party seeking relief from entry of default need only establish "good cause," the factors generally considered in determining whether relief is appropriate are the same as those required to be shown for relief from default judgment under Rule 60(b)(1): mistake, inadvertence, surprise or excusable neglect. *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 368 (7th Cir. 1983).  "Neglect" generally means carelessness or negligence, and whether such neglect is "excusable" is an equitable determination that takes into account all of the relevant circumstances surrounding the omission, including prejudice to the plaintiff, the length of the delay and its impact on judicial proceedings, the reason for the delay (i.e., whether it was in the party's control), and whether the party acted in good faith. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993).

Respondents rely heavily on the opinions in *Signed Personal Check and TCI Group Life*

*Ins. Plan v. Knoebbler*, 244 F.3d 691 (9th Cir. 2001), but are selective about the holdings they quote from those opinions and silent on the underlying facts in those cases.  The facts in this case bear no similarities at all to the facts in Signed Personal Check, and the procedural posture of this four year-old case in which the trial, had there been one, would have occurred nearly four months ago, could not be more different than the cited case, in which no claims were filed and the government moved promptly for default judgment.  Those differences account for the failure of the court in *Signed Personal Check* to discuss the other factors to be considered by the Court in deciding whether to grant relief from entry of default.  As the *TCI Group* court stated, the equitable doctrine of excusable neglect (on which the respondents here base their claims), includes consideration of four factors identified by the Supreme Court: (1) prejudice to the opposing party; (2) the length of the delay in seeking relief and the impact on the judicial proceedings; (3) the reasons for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

After years of litigation, this case was set for a trial on the merits in October 2012.  The respondents, each of whom was aware of the seizure of his property and the pendency of this action, failed to take any action over the 3 ½ -year life span of this case to do anything to protect their interests.  Instead, they waited until all of the claims of the parties had been resolved and the government filed its motion for default judgment.  Each of the factors identified in *TCI Group* favors the granting of the government's motion.  First, the prejudice to the government is substantial.  The respondents have waited almost four years since the filing of the complaint to come forward, making it much more difficult to identify and gather the witnesses and evidence necessary to address their tardy claims.  Second, their delay extended beyond the date set for the trial of this matter, meaning that if they are allowed to file claims and answers, the government and the Court will be required to repeat the entire process of this litigation.  Third, the reasons for the delays do not justify relief, as explained below.  Fourth, the respondents here did not act in good faith.  They chose to rely upon other people to protect their interests without any encouragement from the government or the Court, or simply ignored the notices provided to

them.  In addition, the respondents who claim not to have received actual notice of the case appear to have had actual knowledge of the litigation.  In a forfeiture claim, actual knowledge by the claimant in time to make a claim cures any defect in the government's giving of notice.  *See* Rule G(4)(b)(v), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action: Actual Notice ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.").

**Claimant Widmayer stipulated to dismiss his claim on May 18, 2012**

On May 18, 2012, Claimant Widmayer and the Government filed a stipulation and request to dismiss—the Government gave him back two motorcycles and he agreed to withdraw his claim as to any remaining assets.  Stipulation  (Dkt. 361).  The Stipulation included the following language:

> Claimant will and hereby does withdraw his claim to any of the remaining assets in this action, and releases the United States of America, its agencies, agents, and officers, including employees and agents of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), from any and all claims, actions or liabilities arising out of or related to the seizure and retention of the defendant motorcycles and/or this civil forfeiture action, including, without limitation, any claim for attorneys' fees, costs or interest which may be asserted on behalf of Claimant against the United States, whether pursuant to 28 U.S.C. § 2465 or otherwise.

*Id.*  The Court subsequently entered an Order (Dkt. 395) stating that Widmayer had "withdrawn his claim and answer and is hereby excused from further participation."

Widmayer's current argument that the case against "various firearms, ammunition and items of jewelry" should be reopened and he should get them back because "he had always been under the impression that the personal property would be addressed after the conclusion of the forfeiture proceedings" Claimant's Opp'n at 20, is in direct contradiction to the explicit language

of the Stipulation that he filed.  Accordingly, Plaintiff's Motion for Default is GRANTED as to Widmayer.

At oral argument on February 14, 2013, when the Court inquired as to whether any of the jewelry sought by Mr. Widmayer was of sentimental value and not related to Mongol activities, the Government and Claimants' counsel conferred and represented to the Court that any such jewelry (a high school ring was mentioned) would be returned to Claimant Widmayer, notwithstanding the Court's granting of Plaintiff's motion as to all other items.

### b.   The claims of Harry Reynolds II, Gary Guerrero, Juan Alfred Gonzalez, and Moises Aragon were properly stricken, and default was properly entered against them.

#### i.   Harry Reynolds II

Reynolds's claim and answer in this action were stricken on May 16, 2012, by order of the Court (Dkt. 377), after Reynolds failed to appear at multiple status conferences, including one on May 14, 2012.  The Clerk subsequently entered default on May 25, 2012 (Dkt. 398).  He admits that "in reviewing this matter, I realized that I received notices of various Status Conferences, but none of these notices indicated that my presence was required," but he argues that, because the May 16, 2012, Motion to Strike Claim and Answer was addressed to "Harry Reynolds III" (who was not nor has he ever been involved in this proceeding), and not him, "Harry Reynolds II," the claim and answer "still stand."  Opp'n at 8.

Reynolds reliance on a typo is unavailing.  The Clerk properly entered default against "Harry Reynolds II" on May 25, 2012, and that default still stands.  Reynolds has not shown good cause or excusable neglect for the actions that led to his default, and, accordingly, the Government's Motion for Default Judgment is GRANTED as to Reynolds.

#### ii.   Gary Guerrero

Guerrero's claim and answer were also stricken on May 16, 2012, by this Court (Dkt. 377), also because he failed to show up at status conferences.  Default entered on May 25, 2012. Guerrero moved for relief from default on June 22, 2012 (Dkt. 419). The Court denied

Guerrero's motion on July 17, 2012 (Dkt. 453).

Here, Guerrero argues that he displayed excusable neglect in failing to appear at status conferences, and his default should be set aside.   However, the Government correctly observes that Guerrero's current claim is a really a request to reconsider this Court's denial of Guerrero's first motion for relief from default.  Guerrero's claim must fail, because he has offered no new evidence and offers no new arguments that would justify reconsideration. *See* Local Rule 7-18. Accordingly, the Government's Motion for Default is GRANTED as to Guerrero.

### iii.  Juan Alfred Gonzalez

Gonzalez's claim was also stricken on May 16, 2012 (Dkt. 377), for failing to appear at status conferences.  Pro se, he sought relief from entry of default in a Motion to Dismiss (Dkt. 413) filed on May 31, 2012, which was set for hearing on June 20, 2012, at which he failed to appear or request permission not to appear.  Nevertheless, the Court took the matter under submission and accepted a Reply to the Government's Opposition to his motion.  On August 10, 2012, the Court denied Gonzalez's motion and declined to set aside default (Dkt. 460), finding that he had not shown a reasonable excuse for failing to notify the Court of his change of address and also finding that he had not shown that he had a meritorious defense.

Gonzalez now objects to the Government's current Motion for Default on the same grounds as his previous filings: he states that he had no notice that he was ever a party to this case until "sometime in 2012," and so couldn't have been expected to notify the Court of changes to his address.  Gonzalez Opp'n (Dkt. 582) at 2.  However, his claim is belied by the fact that he himself filed a Verified Claim (Dkt. 95) and Answer (Dkt. 92) in 2009, after which he admits to having received filings related to this case.  Gonzalez Supp. To Rule 60(b) Motion (Dkt. 567) ("On occasions Claimant did receive documents related (apparently) to other persons in this case. . . styled *U.S. v. Assorted Firearms. . . .*").   He argues that because his name was not on the documents, he had no notice of the proceedings.  *Id.*

These arguments were unavailing when this Court denied his Motion to Dismiss and Set Aside Default, and they remain so.  Accordingly, the Government's Motion for Default is

GRANTED as to Gonzalez.

### iv.  Moises Aragon

Moises Aragon did not file any documents in response to Plaintiff's Motion for Default Judgment, but he did appear before the Court on February 14, 2013, when the hearing on this motion was held.  Claimant Aragon, whose claim was also stricken on May 16, 2012 (Dkt. 377), for failing to appear at several status conferences, argued to the Court that, while he had received paperwork related to this case at an old address at an unspecified time in the past, he had since moved several times and stopped receiving notice of proceedings at some point before the May 16, 2012, conference.

It appears that Aragon never notified the Court, nor the Government, of his change of address, and never participated in this case beyond the filing of his initial claim (Dkt. 133) in July of 2009.  The  Clerk properly entered default against him on May 25, 2012, and that default still stands.  Aragon has not shown good cause or excusable neglect for the actions that led to his default, and his prolonged absence from this case, and, accordingly, the Government's Motion for Default Judgment is GRANTED as to Aragon.

### c.  The remaining men, Jay Aguallo, Jose Borboa, Mark Luttrell, Robert Medrano, Jose Padilla, and Gerald Pontod, failed to file a timely claim.

The filing of a timely verified claim under the Supplemental Rules is a jurisdictional prerequisite to a claimant's ability to contest a federal *in rem* forfeiture action.  *See United States v. Real Property Located at 22 Santa Barbara Dr.*, 264 F.3d 860 (9th Cir. 2001).  As the Government details in its filings, each of the above-listed claimants either received notice of the action or there is ample evidence that he had actual notice of the action.  Each nevertheless failed to file a timely claim.  While courts have discretion to allow the filing of late claims, the Court finds that such relief is not warranted here.  The Ninth Circuit has held that the court's discretion to grant additional time to file a claim

> is not unbounded.  It should only exercise its discretion to grant additional time
> where the goals underlying the time restriction . . . are not thwarted.  The purpose

of the time limit is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay.

*United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985).

The grounds for relief from the claim filing deadline do not apply here.  Situations in which courts have granted relief from the deadline include cases where "a claimant in good faith had attempted to file a claim on time, . . . or had relied detrimentally on misinformation from a government agency, . . . or had expended considerable resources preparing the case for trial . . . ." *$50,200.00*, 76 F. Supp. 2d at 1255; *United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1, 5  n.18 (D.D.C. 1996) ("[C]ases in which courts have allowed the untimely filing of verified claims have involved pro se claimants who made a good faith effort to file a timely claim, but were misled [by the government] as to the manner, time or place for filing, or the civil forfeiture case was well into litigation [between that claimant and the government] when the defect in the filing requirements became an issue.").  Those grounds are unavailable to any of the respondents.

Here, there is no evidence suggesting that that the government encouraged the delay.  The reasons for the delay, indeed, are not objectively reasonable or particularly credible.  The respondents failed to take any steps to notify the government or the Court of their claims until months after the resolution of the case on the first day of trial, which was years after the claim filing deadline.  Accordingly, they have not shown good cause for relief from a timely (and previously-extended) filing deadline.

Claimants Aguallo and Padilla appear to argue that they relied on friends or acquaintances to pursue their claims, and were dismayed to find that no claim was ever filed on their behalf. *See* Opp'n (Dkt. 589) at 9.  Similarly, Claimant Pontod states that he was aware of this action in or about July 2010, Pontod Decl. (Dkt. 589-1) ¶ 3, but he relied on assurances by another claimant that "paperwork had been submitted" on his behalf. *Id.*  Claimant Luttrell admits that "received a packet of information which he now knows contained the First Amended Complaint

for Forfeiture," but offers no explanation for his failure to take any action until this point other than to state that he "had retired from the Mongols" and "did not have access to the attorney who was handling the matter on behalf of club members."  Opp'n (Dkt. 589) at 10.

Claimant Medrano states that his attorney, Richard Hamar, "filed administrative claim(s) for all" his seized property, but neither of them participated in this case even as he learned "that the other claimants were going back and forth to court."  Medrano Decl. (Dkt. 589-1 Ex. G).  The Government points out that no "administrative" forfeiture claims were ever initiated against any of the defendant motorcycles, Pl's Reply (Dkt. 591) at 17, and correctly argues that, even in light of notice that claimants were appearing before this Court, Medrano failed to take even the most basic steps to protect his interests in the case.  Finally, while Claimaint Borboa declares that he received no notice of the action, two notices were accepted at the Borboa residence: one for which the return receipt was returned without a signature, and the other, which was mistakenly addressed to Jose's son Mario Borboa, but was signed for by "J. Borboa."  Keleshyan Decl. Ex. D-E.

These claimants have failed to show good cause for permission to file untimely claims.

## IV.    Disposition

For the foregoing reasons, Plaintiffs' Motion for a Default Judgment is GRANTED. The Court deems that any potential claimant or lienholder (other than those listed in Exhibit "N") admit the allegations of the Complaint to be true.

IT IS ORDERED, ADJUDGED AND DECREED that all right, title, and interest of any potential claimant or lienholder in and to each defendant listed in Exhibit "M" to the government's default motion is condemned and forfeited to the United States of America, and no other right, title or interest shall exist therein.  The government shall dispose of said assets in accordance with law.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all right, title, and interest of all potential claimants to the defendants listed in Exhibit "N," except for the lienholders identified in that exhibit, is forfeited to the United States.  The Exhibit "N"

10

defendants shall be returned to their respective lienholders through their counsel, and shall be made available in the Central District of California.

IT IS SO ORDERED.

DATED: February 21, 2013

_David O. Carter_

DAVID O. CARTER
United States District Judge

11